ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2008 MAR 27 PM 12:28
CLERK C Adams
SO. DIST. OF GA.

| | |
|---|---|
| BOBBY RUTLEDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 307-055 |
| ) | |
| DR. FNU LIFT, Physician, Telfair State ) | |
| Prison Medical Department, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Georgia State Prison located in Reidsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 in the Middle District of Georgia. As the events forming the basis of the above-captioned complaint occurred in Helena, Georgia, the Honorable Claude W. Hicks, Jr., United States Magistrate Judge, transferred the complaint to this District. (See doc. no. 4). Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because Plaintiff's complaint was filed IFP, it must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) *(per curiam)*, but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[1]

---

[1] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay the initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which

# I. BACKGROUND

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Dr. FNU Lift, Physician, Telfair State Prison ("TSP") Medical Department; (2) FNU Herman, Physician's Assistant, TSP; (3) Fred Burnette, Warden, TSP; (4) FNU Madison, Lieutenant, TSP; (5) FNU Farmer, Officer, TSP; (6) Ms. FNU Hardy; and (7) the Georgia Department of Corrections ("GDC"). (Doc. no. 1, Compl., pp. 1 & 3). Plaintiff submits that Defendants violated his constitutional rights. (Doc. no. 1, Aff., pp. 2-7).

Plaintiff alleges that, prior to his incarceration, he was diagnosed with a rare condition, requiring him to take B-12 shots for the remainder of his life. (Id. at 2). Plaintiff contends that in 2001 he was transferred to TSP, where Defendant Herman confiscated medication provided to him at Hays State Prison and refused to administer B-12 shots from 2001 until 2006. (Id.). Plaintiff maintains that, on or around March 2006, he received medical treatment from Defendants Lift and Herman, who gave him two types of blood pressure medication. (Id. at 2-3). Plaintiff submits that, while at TSP in early 2006, Defendant Lift ordered that Plaintiff be given an antibiotic, which caused a reaction that rendered Plaintiff "vulnerable and uncoordinated." (Id. at 3).

Plaintiff further alleges that, in or around April 2006, he was transferred to an unnamed location for a brain scan. (Id.). According to Plaintiff, when he arrived at the unnamed location, Defendant Lift informed Plaintiff that he had lesions and "bugs on [his] brain" and that dye needed to be injected into Plaintiff's bloodstream. (Id.). Plaintiff maintains that, after he informed technicians that he was allergic to the dye, they refused

---

Plaintiff signed, he remains liable for the full filing fee.

treatment. (Id.). Plaintiff submits that the lesions are "attributed to the blood pressure medication as well as a flu shot ordered by Dr. Lift around March 2006 . . . ." (Id.).

Plaintiff contends that, upon his return to TSP, Defendant Lift informed him that, because Plaintiff refused the dye injections, "Atlanta will not approve another test" and that he could do nothing else for Plaintiff. (Id. at 4). Plaintiff also submits that Defendant Lift notified Plaintiff that he was infected with AIDS or HIV. (Id. at 3-4). Plaintiff alleges that, in order to receive treatment from Defendant Lift, he consented to the dye treatment. (Id. at 4). Plaintiff contends that, during his examination with Defendant Lift, he informed Defendant Lift that he was having trouble balancing, so Defendant Lift provided him with crutches and a cane. (Id. at 5). Plaintiff maintains that, after receiving dye treatment, Defendant Lift confirmed that he did not have long to live and stated, "[Plaintiff's] people usually die out around fifty years old, so [Plaintiff has] lived [his] life expectancy."[2] (Id.).

Plaintiff alleges that, later in the week, he could not shower, dress, stand for inspection, or go to the dinning hall without assistance. (Id.). Plaintiff contends that he suffered a stroke sometime in May 2006 and that unspecified inmates informed Defendant Burnette about Plaintiff's condition. (Id.). Plaintiff maintains that, after he was "called back to Medical," Defendant Lift stated that "there was nothing wrong with [Plaintiff] . . . ." (Id.). Plaintiff submits that, "during that time," he was approached by Defendant Burnette and that, after he informed Defendant Burnette that he was having difficulty functioning, Defendant Burnette instructed Defendant Madison to confine Plaintiff in administrative segregation. (Id.). Plaintiff complains that, while he was in administrative segregation for five (5) days,

---

[2]The Court notes that Plaintiff also alleges that, after the dye treatment was administered, Dr. Lift informed him that he no longer suffered from brain lesions or HIV. (Doc. no. 1, Compl., p. 4).

3

"Medical" did not check on his condition, he could not use the bathroom without falling off the toilet or urinating in his clothes, and he slept on a concrete slab. (Id.). According to Plaintiff, after Defendant Madison discovered him unconscious, he was rushed to Telfair Memorial Hospital, where he stayed in the intensive care unit for four (4) days. (Id. at 5-6). Plaintiff submits that he was provided with a catheter to assist with urination. (Id. at 6).

Finally, Plaintiff alleges that, while he was still in the hospital, Defendant Farmer received a telephone call from Defendant Madison, or some other "head personnel," instructing him to take Plaintiff to Milan State Prison ("MSP") against "A.M.A." advice. (Id.). Plaintiff alleges that the catheter was then removed, causing him to bleed and making it difficult for him to walk or maneuver his extremities. (Id.). Plaintiff contends that, during the ride to MSP, Defendant Farmer stated, "You think you going to lay up in that hospital bed and eat better than me, don't [sic] you. We got something planned for you, and you won't [sic] like it. We're [sic] getting rid of your worrisome behind." (Id. at 6-7). Plaintiff maintains that, although he was confined to a wheelchair, he was left in the receiving area at MSP. (Id. at 7). Plaintiff explains that, because MSP was not set up to take prisoners from the hospital, he was transferred to Georgia State Prison, where he had to be re-taught to read, write, and walk. (Id.). Plaintiff concludes that, while incarcerated at Georgia State Prison, unnamed medical personnel informed Plaintiff that he acquired Hepatitis C, which Plaintiff attributes to the alleged lack of proper B-12 treatment received at TSP. (Id. at 3). Plaintiff complains that he does not have full use of his extremities and requests $5,000,000 in damages. (Doc. no. 1, Compl., p. 5, Aff., p. 7).

## II. SCREENING OF COMPLAINT

A.  **Eleventh Amendment Immunity for Defendant GDC**

Defendant GDC should be dismissed from this case because Plaintiff fails to state a claim against this Defendant upon which relief may be granted. "The Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Furthermore, the Supreme Court has clearly stated that "a suit in which the State or one of its agents or departments is named as the defendant is proscribed by the Eleventh Amendment . . . This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp., 465 U.S. at 100 (1984) (citations omitted); see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978) (*per curiam*); Edelman v. Jordan, 415 U.S. 651, 663 (1974). Moreover, 42 U.S.C. § 1983 does not abrogate the sovereign immunity of the states. See Quern v. Jordan, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Thus, 42 U.S.C. § 1983 does not override state sovereign immunity afforded by the Eleventh Amendment.

Based on the allegations in Plaintiff's complaint, the Court concludes that the GDC is immune from suit in this federal action. The Supreme Court has stated that "[t]here can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit." Pugh, 438 U.S. at 781. Furthermore, the Eleventh Circuit, citing Pugh, has definitively stated that

5

"[t]he Eleventh Amendment bars [an] action against the Georgia Department of Corrections and Board of Corrections." Stevens, 864 F.2d at 115; see also Leonard v. Dep't of Corrs., 232 Fed. Appx. 892, 894 (11th Cir. 2007) (*per curiam*) ("The Department of Corrections is not amenable to suit because it has immunity under the Eleventh Amendment."). Accordingly, Defendant GDC should be dismissed from this case because Plaintiff fails to state a claim against Defendant GDC upon which relief may be granted.

### B. Defendant Hardy

Although Plaintiff names FNU Hardy as a Defendant, he does not assert any allegations of wrongdoing regarding Defendant Hardy in his statement of claims. Indeed, it does not appear that Plaintiff mentions Defendant Hardy anywhere in his statement of claims. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Therefore, in the absence of an allegation of any such connection between any actions of Defendant Hardy with the alleged unconstitutional violations, Plaintiff fails to state a claim for relief against Defendant Hardy. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). Accordingly, Defendant Hardy should also be dismissed from this case because Plaintiff also fails to state a claim against Defendant Hardy upon which relief may be granted.

### C. No Liability Based on *Respondeat Superior*

To the extent Plaintiff blames Defendant Burnette for the alleged constitutional violations of other individuals related to Plaintiff's medical treatment, such an allegation also

fails to state a claim upon which relief may be granted. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff does not allege, and the Court has no reason to believe, that Defendant Burnette personally participated in Plaintiff's medical treatment.[3]

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Burnette and the alleged constitutional violations concerning Plaintiff's medical treatment. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[4] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails

---

[3] On this point, the Court notes that "[s]upervisory officials must rely on their subordinate professionals to make competent medical decisions. As long as supervisory officials have no reason to believe that their subordinates are failing to carry out their duties in a competent manner, they should not be held liable for medical decisions over which they have no direct control." Waldrop v. Evans, 681 F.Supp. 840, 851 (M.D. Ga. 1988).

[4] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

7

to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

In this case, Plaintiff has not alleged the necessary causal connection, with respect to Defendant Burnette, to hold him liable for the alleged constitutional violations of other individuals related to Plaintiff's medical treatment. Plaintiff has proffered no facts suggesting that Defendant Burnette was responsible for a custom or policy affecting Plaintiff's medical treatment. Although Plaintiff alleges that he suffered a stroke sometime in May 2006 and that unspecified inmates informed Defendant Burnette about his condition, Plaintiff has not alleged that Defendant Burnette knew about any widespread abuses related to the medical treatment of inmates at TSP. Indeed, Plaintiff submits that, after he was "called back to Medical" and during the time he was approached by Defendant Burnette concerning his medical condition, Defendant Lift stated, "there was nothing wrong with [Plaintiff] . . . ." (Doc. no. 1, Aff., p. 5). In sum, Plaintiff has failed to state a claim, related to Plaintiff medical treatment, against Defendant Burnette based on his supervisory position as Warden.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants GDC and Hardy be **DISMISSED**, and that Plaintiff's claim based on Defendant Burnette's supervisory position be **DISMISSED**.[5]

SO REPORTED and RECOMMENDED on this 27th day of March, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendant Burnette based on Plaintiff's retaliation and conditions of confinement claims, as well as on Defendants Lift, Herman, Madison, and Farmer based on Plaintiff's deliberate indifference claims.